IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01393-PAB-NRN

BMO BANK N.A.,

    Plaintiff,

v.

SIM TRANSPORT, LLC,
SIM TRANSPORT, INC, and
IVAN SKOREV,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Plaintiff's Motion for Summary Judgment [Docket No. 24]. Defendants did not respond to the motion. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

Plaintiff BMO Bank N.A. ("BMO") filed this case on May 17, 2024 against defendants Sim Transport, LLC ("Sim LLC"), Sim Transport, Inc. ("Sim Inc."), and Ivan Skorev. Docket No. 1 at 1.

On June 10, 2024, defendants, represented by the same attorney, filed an answer to the complaint. Docket No. 5 at 1. On August 26, 2024, counsel for defendants filed an unopposed motion to withdraw as counsel. Docket No. 14. The motion to withdraw indicated that mail to the LLC and the corporation could be sent to an address in Fort Lupton, Colorado in care of Mr. Skorev. *Id.* at 3. The assigned

magistrate judge scheduled a hearing on September 3, 2024 regarding the motion to withdraw and ordered that "a representative of the corporate Defendants to appear telephonically."  Docket No. 16.

Mr. Skorev appeared at the hearing.  Docket No. 17 at 1.  The magistrate judge informed Mr. Skorev that corporate entities could not appear in federal court without counsel and that, if Mr. Skorev failed to obtain counsel for the LLC and corporation defendants, plaintiff could move for default judgment against those defendants.[1]  In response to questions from the magistrate judge about Mr. Skorev's intent to defend the case, Mr. Skorev provided non-committal answers regarding whether he would continue to defend the case.  Mr. Skorev indicated that he was considering his available options.  He said that it was possible that he might declare bankruptcy and might dissolve the corporate entities.[2]  The magistrate judge gave the corporate defendants until September 17, 2024 to obtain new counsel.  Docket No. 17 at 1.  No attorney has since appeared on the behalf of any of the three defendants.

On October 4, 2024, plaintiff filed a motion seeking to continue the scheduling conference set for October 11, 2024, stating that:

> Plaintiff is preparing a motion for summary judgment based on its own records, which are sufficient to prove Defendants' liability on all counts.  As such, Plaintiff believe[s] that the best use of the Court's and the parties' resources is to vacate and reset the scheduling conference while Plaintiff proceeds with summary judgment.

---

[1] This colloquy from the hearing is not reflected in the minutes from the hearing, Docket No. 17, but the Court listened to a recording of the hearing.
[2] The Court has not identified any ongoing bankruptcy proceedings involving any of the three defendants.

2

Docket No. 18 at 2, ¶ 4. The magistrate judge granted the motion and directed plaintiff to file its motion for summary judgment on or before November 8, 2024. Docket No. 20. Plaintiff subsequently moved for an extension of time to file its motion for summary judgment, Docket No. 21, and the magistrate judge granted the motion. Docket No. 23. Plaintiff filed its motion for summary judgment on November 22, 2024. Docket No. 24. As of the date of this order, none of the defendants has filed a response.[3]

Plaintiff seeks summary judgment on the first four counts of the complaint, Docket No. 24 at 15, each of which involves a different alleged breach of contract. *See* Docket No. 1 at 10-12. Since defendants did not respond to the motion for summary judgment, the Court considers all supported statements of undisputed fact in plaintiffs' motion as true. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) ("By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion.").

II. UNDISPUTED FACTS

   A. Lease with Sim LLC

On or about December 20, 2019, BMO Harris Bank National Association[4] and Sim LLC entered into a Master Vehicle Lease Agreement, a TRAC Addendum to Master

---

[3] The Local Rules state that "[u]nless otherwise ordered, a response [to a motion for summary judgment] shall be filed no later than 21 days after the date of service of the motion." D.C.COLO.LCivR 56.1(a).

[4] The motion for summary judgment states that, "[e]ffective September 3, 2023, Plaintiff adopted amended articles of association pursuant to which its corporate title was changed from 'BMO Harris Bank National Association' to 'BMO Bank National Association.'" Docket No. 24 at 1 n.1. For simplicity, the Court will use only the term "plaintiff" throughout the remainder of this order.

Vehicle Lease Agreement, and various collateral agreements (together, the "lease."). Docket No. 24 at 3-4, ¶ 1. Plaintiff leased to Sim LLC the equipment described in the lease, and Sim LLC agreed to pay rent and other amounts to plaintiff pursuant to the terms of the lease. *Id.* Plaintiff maintains an ownership interest in the equipment described therein, including all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto. *Id.* at 6, ¶ 6.

Plaintiff has performed any and all conditions and obligations required of it under the lease. *Id.* at 9, ¶ 32.[5] Under the terms of the lease, failure to make a payment when due is considered an event of default. *Id.* at 6, ¶ 9. Sim LLC failed to make the payment due on December 1, 2023 under the lease. *Id.* at 7, ¶ 14. Sim LLC's default under the lease is continuing. *Id.* Due to Sim LLC's default, and pursuant to the terms of the lease, plaintiff elected to cancel the lease effective, February 26, 2024. *Id.* at 8, ¶ 21. Upon cancellation of the lease, any rights of Sim LLC under the lease to possess or use the equipment[6] were terminated. *Id.*, ¶ 22.

Upon cancellation of the lease, all amounts to be paid under the lease became immediately due and owing. *Id.*, ¶ 23. As of September 14, 2024, the amount due and

---

[5] The exact language of this undisputed fact is "Plaintiff has performed any and all conditions and obligations required of it under the Agreements and Guaranties." *See* Docket No. 24 at 9, ¶ 32. In another section of the undisputed facts section, plaintiff defines the term "agreements" to refer collectively to the lease with Sim LLC and the loans to Sim LLC and Sim Inc. *Id.* at 5, ¶ 5. For the sake of clarity, when the Court recites the undisputed facts regarding plaintiff's performance under the agreements and guaranties, *id.* at 9, ¶ 32, or, regarding the fact that the failure to make a payment constitutes a default under the agreements, *id.* at 6, ¶ 9, the Court will use the term "lease," "loan," or "guaranty," as relevant to the contract at issue.

[6] The undisputed facts define "equipment" as the equipment described in the lease, "including all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto." Docket No. 24 at 6, ¶ 6.

4

owing by Sim LLC under the lease, after applying the proceeds of the sale of the equipment, *see* Section E, *infra*, not including attorneys' fees and expenses or cost of collection, was $100,192.90, with interest accruing at a rate of $46.74 per day. *Id.* at 9, ¶ 33.

### B. Loans to Sim LLC

On or about March 27, 2020, plaintiff and Sim LLC entered into a Loan and Security Agreement (the "first LLC loan"). *Id.* at 4, ¶ 2. Pursuant to the first LLC loan, plaintiff financed Sim LLC's purchase of the equipment described in the loan and Sim LLC agreed to repay plaintiff the amount set forth therein, with interest, pursuant to the terms of the loan. *Id.* On or about August 14, 2023, plaintiff and Sim LLC entered into a Loan and Security Agreement (the "second LLC loan"). *Id.* at 5, ¶ 4. Pursuant to the second LLC loan, plaintiff financed Sim LLC's purchase of the equipment described in the loan and Sim LLC agreed to repay plaintiff the amount set forth therein, with interest, pursuant to the terms of the loan. *Id.* On or about September 1, 2023, plaintiff and Sim LLC entered into a Loan and Security Agreement (the "third LLC loan"). *Id.*, ¶ 5. Pursuant to the third LLC loan, plaintiff financed Sim LLC's purchase of the equipment described in the loan and Sim LLC agreed to repay plaintiff the amount set forth therein, with interest, pursuant to the terms of the loan. *Id.*

Plaintiff has performed any and all conditions and obligations required of it under the loans. *Id.* at 9, ¶ 32. Under the terms of the loans, failure to make a payment when due is considered an event of default. *Id.* at 6, ¶ 9. Sim LLC failed to make the payment due February 1, 2024 under the first LLC loan. *Id.* at 7, ¶ 15. Sim LLC's default under the first LLC loan is continuing. *Id.* Sim LLC failed to make the payment due December 1, 2023 under the second LLC loan. *Id.*, ¶ 16. Sim LLC's default under

5

the second LLC loan is continuing.  *Id.*  Sim LLC failed to make the payment due December 1, 2023 under the third LLC loan.  *Id.*, ¶ 17.  Sim LLC's default under the third LLC loan is continuing.  *Id.*

Due to Sim LLC's defaults, plaintiff elected to accelerate the amounts due and owing under the LLC loans, effective February 26, 2024.  *Id.* at 8, ¶ 24.  As of September 14, 2024, after applying the proceeds of the sale of the respective collateral,[7] the amount due and owing under the Sim LLC loans, not including attorneys' fees and expenses or cost of collection, was $202,968.21, with interest accruing at a rate of $98.15 per day.  *Id.* at 9, ¶ 34.

### C. Loan to Sim Inc.

On or about August 11, 2023, plaintiff and Sim Inc. entered into a Loan and Security Agreement (the "Inc. loan").  *Id.* at 4, ¶ 3.  Pursuant to the loan, plaintiff financed Sim Inc.'s purchase of the equipment described in the loan and Sim Inc. agreed to repay plaintiff the amount set forth therein, with interest, pursuant to the terms of the loan.  *Id.*

Plaintiff has performed any and all conditions and obligations required of it under the loan.  *Id.* at 9, ¶ 32.  Under the terms of the loan, failure to make a payment when due is considered an event of default.  *Id.* at 6, ¶ 9.  Sim Inc. failed to make the payment due December 1, 2023 under the Inc. loan.  *Id.* at 7, ¶ 18.  Sim Inc.'s default under the Inc. loan is continuing.  *Id.*

Due to Sim Inc.'s defaults, plaintiff elected to accelerate the amounts due and owing under the Inc. loan, effective February 26, 2024.  *Id.* at 8, ¶ 25.  As of September

---

[7] The undisputed facts define "collateral" as the equipment pledged as collateral in each of the loan agreements.  *See* Docket No. 24 at 5, ¶¶ 4-5.

6

14, 2024, after applying the proceeds of sale of the respective Collateral, the amount due and owing under the Inc. loan, not including attorneys' fees and expenses or cost of collection, was $280,332.53, with interest accruing at a rate of $139.47 per day. *Id.* at 10, ¶ 35.

### D. Guaranty Agreements with Mr. Skorev

To induce plaintiff to enter into the agreements, Mr. Skorev, as guarantor,[8] unconditionally guaranteed the performance of Sim LLC and Sim Inc. in all of their present and future liabilities, obligations, and indebtedness to plaintiff. *Id.* at 6, ¶ 8.

Plaintiff has performed any and all conditions and obligations required of it under the guaranties. *Id.* at 9, ¶ 32. Under the guaranties, Mr. Skorev is obligated to pay all amounts due and owing to plaintiff under the agreements, without limitation. *Id.* at 9, ¶ 30. Sim LLC and Sim Inc. failed to make payments due under the agreements, *id.* at 7, ¶¶ 14-18, and there are amounts due and owing under those agreements. *Id.* at 9-10, ¶¶ 33-35. Mr. Skorev did not make the payments due under the guaranty agreements, and his defaults under the guaranties are continuing. *Id.* at 7, ¶ 20. As of September 14, 2024, the total amount due and owing under the guaranties, not including attorneys' fees and expenses or cost of collection, was $583,493.64, with interest accruing at a rate of $284.36 per day. *Id.* at 10, ¶ 36.[9]

---

[8] The undisputed fact does not identify the guarantor by name, *see* Docket No. 24 at 6, ¶ 8, but the documents cited in support of this fact list Mr. Skorev as the guarantor. *See* Docket No. 24-8 at 2-5.

[9] These figures represent the sum of the amounts outstanding and the interest accruing under each of the agreements and are not a duplicative liability. Based on the Court's understanding of the guaranty agreements, any debt payment made by Sim LLC or Sim Inc. would reduce Mr. Skorev's liability as the guarantor and vice versa. *See* Docket No. 24-8 at 2-5.

7

### E. Other Material Facts

Plaintiff has recovered the equipment and the collateral. *Id.* at 10, ¶ 37. Plaintiff does not accept the possession of the equipment and the collateral as full satisfaction of the indebtedness. *Id.* Plaintiff proceeded to sell them in a commercially reasonable manner and the net proceeds of the sales have been credited to the amounts due and owing under the agreements. *Id.* After applying the net proceeds of the sales pursuant to the agreements, a deficiency remains. *Id.*

Under the agreements and the guaranties, defendants are obligated to pay attorneys' fees and costs incurred by plaintiff in the enforcement of its rights, including this lawsuit. *Id.* at 10, ¶ 39. To enforce its rights under the agreements, plaintiff has engaged the legal services of Husch Blackwell LLP and has incurred attorneys' fees and costs in the prosecution of this matter. *Id.* As of October 31, 2024, plaintiff has incurred attorneys' fees and expenses as allowed under the agreement and guaranties in the amount of $20,036.00 in fees and $864.10 in costs and expenses, and plaintiff seeks an award for its reasonable attorneys' fees and expenses in this amount. *Id.* at 11, ¶ 40.

### III. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.

8

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

## IV.  ANALYSIS

### A.  Breach of Contract Claims

As a threshold matter, plaintiff asserts that Illinois law governs plaintiff's claims.  Docket No. 24 at 13 n.3.  For each of the applicable contracts, plaintiff identifies a choice-of-law clause specifying that Illinois law governs disputes arising under the contract.  *Id.*  Since defendants' failure to respond to the motion means there is no dispute as to the applicable choice of law to be applied, the Court will apply Illinois law.  *Cf. EchoStar Satellite, L.L.C. v. Splash Media Partners, L.P.*, No. 07-cv-02611-PAB-BNB, 2010 WL 1380314, at 3 n.3 (D. Colo. Mar. 31, 2010).[10]

Under Illinois law, a breach of contract claim requires 1) the existence of a valid and enforceable contract, 2) substantial performance by the plaintiff, 3) breach by the defendant, and 4) damages caused by that breach.  *Ivey v. Transunion Rental Screening Sols., Inc.*, 215 N.E.3d 871, 877 (Ill. 2022).

---

[10] The Court finds that the choice between Illinois and Colorado law is ultimately immaterial.  The elements of a breach of contract claim are essentially the same in both jurisdictions.  *Compare Ivey v. Transunion Rental Screening Sols., Inc.*, 215 N.E.3d 871, 877 (Ill. 2022), *with Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024).  Both jurisdictions hold that a failure to make a payment due under a contract constitutes a breach of that contract.  *Compare Og Plumbing LLC v. Basecamp Old Irving Park LLC*, 2024 IL App (1st) 221813-U, ¶ 50 (Ill. App. Ct. Sept. 26, 2024), *with McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 965 (Colo. App. 2015).

Plaintiff's first breach of contract claim involves the breach of a lease by Sim LLC. Docket No. 1 at 10, ¶¶ 54-59. The Court finds that the undisputed facts support a breach of contract claim. Plaintiff and Sim LLC entered into a valid contract in which plaintiff leased equipment to Sim LLC in exchange for Sim LLC agreeing to pay rent and other amounts to plaintiff. Docket No. 24 at 3-4, 6, ¶¶ 1, 6. Plaintiff substantially performed its obligations under the lease. *Id.* at 9, ¶ 32. Sim LLC failed to make the payment due December 1, 2023 under the lease, *id.* at 7, ¶ 14, which constitutes a breach of the contract. *See Og Plumbing*, 2024 IL App (1st) 221813-U, ¶ 50 (citing Restatement (Second) of Contracts § 235 (Am. L. Inst. 1981)). Plaintiff suffered damages of $100,192.90, with interest accruing at a rate of $46.74 per day. Docket No. 24 at 9, ¶ 33. Plaintiff has therefore identified undisputed facts supporting each element of a breach of contract claim and is thus entitled to summary judgment on this claim.

Plaintiff's second breach of contract claim involves the breach of loan agreements by Sim LLC. Docket No. 1 at 11, ¶¶ 60-65. The Court finds that the undisputed facts support a breach of contract claim. Plaintiff and Sim LLC entered into a valid contract, in the form of loan agreements in which plaintiff financed Sim LLC's purchase of equipment in exchange for Sim LLC agreeing to repay plaintiff, with interest. Docket No. 24 at 4-5, ¶¶ 2, 4-5. Plaintiff substantially performed its obligations under the loan agreements. *Id.* at 9, ¶ 32. Sim LLC failed to make payments due on the loans, *id.* at 7, ¶¶ 15-17, which constitutes a breach of the contracts. *Og Plumbing LLC*, 2024 IL App (1st) 221813-U at ¶ 50. Plaintiff suffered damages of $202,968.21, with interest accruing at a rate of $98.15 per day. *Id.* at 9, ¶ 34. Plaintiff has therefore

identified undisputed facts supporting each element of a breach of contract claim and is thus entitled to summary judgment on this claim.

Plaintiff's third breach of contract claim involves the breach of a loan agreement by Sim Inc.  Docket No. 1 at 11-12, ¶¶ 66-71.  The Court finds that the undisputed facts support a breach of contract claim.  Plaintiff and Sim Inc. entered into a valid contract, in the form of a loan agreement in which plaintiff financed Sim Inc.'s purchase of equipment in exchange for Sim Inc. agreeing to repay plaintiff, with interest.  Docket No. 24 at 4, ¶ 3.  Plaintiff substantially performed its obligations under the loan agreement. *Id.* at 9, ¶ 32.  Sim Inc. failed to make a payment due on the loan, *id.* at 7, ¶ 18, which constitutes a breach of the contract.  *Og Plumbing LLC*, 2024 IL App (1st) 221813-U at ¶ 50.  Plaintiff suffered damages of $280,332.53, with interest accruing at a rate of $139.47 per day.  *Id.* at 10, ¶ 35.  Plaintiff has therefore identified undisputed facts supporting each element of a breach of contract claim and is thus entitled to summary judgment on this claim.

Plaintiff's fourth breach of contract claim involves the breach of guaranty agreements by Mr. Skorev.  Docket No. 1 at 12, ¶¶ 72-77.  The Court finds that the undisputed facts support a breach of contract claim.  Plaintiff and Mr. Skorev entered into valid contracts, in the form of guaranty agreements, in which Mr. Skorev unconditionally guaranteed the performance of Sim LLC and Sim Inc. in their liabilities to plaintiff in exchange for plaintiff making a lease and loans to those entities.  Docket No. 24 at 6, ¶ 8.  Plaintiff substantially performed its obligations under the guaranty agreements.  *Id.* at 9, ¶ 32.  When the guaranties were triggered, Mr. Skorev failed to make the payments due under the lease and loan agreements.  *Id.* at 7, ¶ 20.  Under

the terms of the guaranty agreements, Mr. Skorev's obligation is to pay plaintiff for any amount due under the agreements that Sim LLC or Sim Inc. failed to pay. *See* Docket 24-8 at 2-5.[11] Mr. Skorev is thus liable for the $583,493.64 in damages outstanding under the agreements, with interest accruing at a rate of $284.36 per day. *Id.* at 10, ¶ 36. Plaintiff has therefore identified undisputed facts supporting each element of a breach of contract claim and is thus entitled to summary judgment on this claim. The Court will therefore grant plaintiff's motion for summary judgment.

### B. Attorneys' Fees

Under the agreements and guaranties, defendants are obligated to pay the attorneys' fees and costs incurred by plaintiff in enforcing its rights. *Id.* at 10, ¶ 39. Plaintiff has incurred $20,036.00 in attorneys' fees and $864.10 in costs and expenses. *Id.* at 11, ¶ 40. Plaintiff provided a declaration from one of its attorneys, along with supporting documentation, regarding the fees and expenses. Docket No. 25; Docket No. 25-1. While the defendants' failure to respond means that there has been no challenge to the reasonableness of the attorneys' fees, the Court will independently evaluate the reasonableness of the attorneys' fees. Such an evaluation is consistent both with how the Court would evaluate a request for attorneys' fees in a default judgment motion and with how the Court has independently evaluated the merits of the summary judgment motion. *See Porter v. 1st Choice After Sch. Kare*, No. 20-cv-01028-RM-NRN, 2021 WL 1662716, at *1 (D. Colo. Apr. 28, 2021) ("Even though Defendant

---

[11] This contractual provision is in accordance with Illinois law, which provides that "the liability of a guarantor is limited by and is no greater than that of the principal debtor . . . . [The] discharge, satisfaction, or extinction of the principal obligation also ends the liability of the guarantor." *Urban. v. Drain Mgmt. & Inv. Servs.*, LLC, 2013 IL App (1st) 113328-U, ¶ 54 (Ill. App. Ct. Feb. 27, 2013) (citations omitted).

12

does not challenge [the issue of attorneys' fees], the Court makes an independent assessment of these factors in the exercise of its discretion to determine the amount of fees to be awarded.").

Local Rule 54.3(b) requires that a motion for attorneys' fees shall include the following for each person for whom fees are claimed: (1) a summary of the relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed. D.C.COLO.LCivR 54.3.  To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002).  A party seeking an award of attorneys' fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).  The Court has independently reviewed the time entries and finds no basis to conclude that the time spent was not reasonably necessary or that the hourly rates fail to reasonably relate to the prevailing rates in Denver, Colorado.[12]

---

[12] "The applicable hourly rate is the rate that is reasonable in the area where the litigation occurs, even for the fees of out of state lawyers." *Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, No. 04-cv-01258-LTB-BNB, 2005 WL 8171423, at *2 (D. Colo. Dec. 28, 2005), *amended*, 2006 WL 8454015 (D. Colo. Apr. 3, 2006), *and aff'd*, 247 F. App'x 90 (10th Cir. 2007).

13

The Court will therefore award attorneys' fees of $20,036.00 and costs and expenses of $864.10.

### C. Interest Calculations for Damages

Plaintiff is entitled to damages of $303,161.11 from Sim LLC for the breaches of the lease and loan agreements, with interest accruing at a rate of $144.89 per day from September 15, 2024 until the date of judgment. Docket No. 24 at 15. This judgment is being entered on September 11, 2025, so interest will be applied for 361 days. Plaintiff is therefore entitled to $52,305.29 of interest, for total damages of $355,466.40 from Sim LLC.

Plaintiff is entitled to damages of $280,332.53 from Sim Inc. for the breach of the loan agreement, with interest accruing at a rate of $139.47 per day from September 15, 2024 until the date of judgment. Docket No. 24 at 15. This judgment is being entered on September 11, 2025, so interest will be applied for 361 days. Plaintiff is therefore entitled to $50,348.67 of interest, for total damages of $330,681.20 from Sim Inc.

Mr. Skorev, as guarantor of each of the contracts that Sim LLC and Sim Inc. breached, is jointly and severally liable with Sim LLC for the amount that it owes plaintiff and with Sim Inc. for the amount that it owes plaintiff.

## V. CONCLUSION

It is therefore

**ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 24] is **GRANTED**. It is further

**ORDERED** that Sim Transport, LLC and Ivan Skorev shall be jointly and severally liable to plaintiff BMO Bank N.A. for $355,466.40. It is further

14

**ORDERED** that Sim Transport, Inc. and Ivan Skorev shall be jointly and severally liable to plaintiff BMO Bank N.A. for $330,681.20.  It is further

**ORDERED** that defendants Sim Transport, LLC, Sim Transport, Inc., and Ivan Skorev shall be jointly and severally liable to plaintiff BMO Bank N.A. for $20,036.00 in attorneys' fees and $864.10 in costs and expenses.  It is further

**ORDERED** that this case is closed.[13]

DATED September 11, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[13] In addition to the four breach of contract claims discussed in this order, the complaint includes three other "claims," seeking replevin, specific performance, and injunctive relief.  *See* Docket No. 1 at 12-16.  Plaintiff does not address these three counts in the motion for summary judgment, and the Court finds that they are requests for a type of relief rather than a substantive claim that the Court needs to rule upon.  The Court therefore closes this case without considering those "claims."